# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ADELE B. DANTIN** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 18-5575** |
| **OCHSNER CLINIC FOUNDATION** | **SECTION: "G"(3)** |

## ORDER AND REASONS

Before the Court is Defendant Ochsner Clinic Foundation's ("Defendant") "Motion for Summary Judgment."[1] In this litigation, Plaintiff Adele Dantin ("Plaintiff") alleges that Defendant engaged in employment discrimination and retaliation when Defendant unlawfully terminated Plaintiff based on her age.[2] Defendant filed the instant motion for summary judgment, arguing that Plaintiff was terminated based on job performance and not her age.[3] In opposition, Plaintiff asserts that issues of material fact remain on whether the termination was based on age or job performance.[4] Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court will deny the motion.

## I. Background

### A.    *Factual Background*

In the Petition, Plaintiff asserts that Defendant engaged in unlawful age discrimination and retaliation when it terminated her employment.[5] Plaintiff alleges that she worked for Defendant as

---

[1] Rec. Doc. 29.

[2] Rec. Doc. 1-1.

[3] Rec. Doc. 29.

[4] Rec. Doc. 36.

[5] Rec. Doc. 1-1.

the Director of the Emergency Room and Critical Care Unit at the Ochsner St. Anne General facility.[6] Plaintiff states that throughout her career, she "received only positive performance evaluations and consistently qualified for all available annual bonuses."[7] Despite this performance, however, Plaintiff alleges that in June 2015, Defendant criticized Plaintiff's performance and placed Plaintiff on a performance improvement plan ("PIP").[8] Plaintiff asserts that prior to being placed on this PIP, Plaintiff's supervisor had made several statements during staff meetings that seemed to target Plaintiff and another 63-year-old employee.[9] Plaintiff contends that she met with the hospital CEO and a human resource director to challenge being placed on the PIP, but the CEO was "rude and dismissive" and continued to enforce the PIP.[10]

Plaintiff asserts that under the PIP, she performed her duties at the highest level, but in February 2016, Defendant placed Plaintiff on a second PIP.[11] Plaintiff alleges that she asked for suggestions on how she could improve under the second PIP, but her supervisor was unresponsive.[12] Plaintiff then states that when she asked to be placed on medical leave in March 2016, Defendant used the time as an opportunity to exclude Plaintiff from meetings, limit her access to employee accounts, and produce at least two paychecks that were incorrect.[13] Plaintiff asserts that she was terminated on July 15, 2016 while on medical leave, and she was replaced by a nurse "believed to be in her mid-twenties or early thirties."[14] Plaintiff contends that Defendant's

---

[6] *Id.* at 2.

[7] *Id.* at 3.

[8] *Id.*

[9] *Id.* at 3–4.

[10] *Id.* at 4.

[11] *Id.* at 5.

[12] *Id.*

[13] *Id.* at 6.

[14] *Id.* at 6–7.

actions constitute unlawful employment discrimination and retaliation in violation of the federal Age Discrimination in Employment Act ("ADEA") and the corresponding Louisiana statute.[15]

## B.     *Procedural Background*

On March 9, 2018, Plaintiff filed a Petition for Damages in the 17th Judicial District for the Parish of Lafourche, State of Louisiana against Defendant, asserting state and federal claims of age discrimination.[16] On June 1, 2018, Defendant removed the action to this Court.[17]

On July 5, 2018, Defendant filed a motion to dismiss Plaintiff's state law claims as prescribed.[18] On July 26, 2018, Plaintiff filed a motion to voluntarily dismiss her state law claims.[19] On August 16, 2018, the Court granted Plaintiff's motion to dismiss the state law claims.[20]

On March 26, 2019, Defendant filed the instant motion for summary judgment on Plaintiff's remaining federal claims.[21] On April 16, 2019, Plaintiff filed an opposition.[22] With leave of Court, Defendant filed a reply on April 23, 2019.[23] Also with leave of Court, Plaintiff filed a sur-reply on April 25, 2019.[24] On May 1, 2019, with leave of Court, Defendant filed another sur-reply.[25]

---

[15] *Id.,* at 7–8.

[16] Rec. Doc. 1-1.

[17] Rec. Doc. 1.

[18] Rec. Doc. 15.

[19] Rec. Doc. 19.

[20] Rec. Doc. 21.

[21] Rec. Doc. 29.

[22] Rec. Doc. 36.

[23] Rec. Doc. 40.

[24] Rec. Doc. 46.

[25] Rec. Doc. 49.

## II. Parties' Arguments

### A.    *Defendant's Arguments in Support of the Motion*

In the motion, Defendant urges the Court to grant summary judgment because Plaintiff cannot establish a *prima facie* case of age discrimination or retaliation.[26] Further, Defendant argues, Plaintiff cannot prove that Defendant's proffered reason for Plaintiff's termination— Plaintiff's poor job performance—was a pretext for either age discrimination or retaliation.[27]

### 1.    Age Discrimination Claim

Defendant argues that because Plaintiff lacks direct evidence of age discrimination, she must present a *prima facie* case under the *McDonnell-Douglas* burden-shifting framework.[28] Defendant contends that Plaintiff cannot establish a *prima facie* case because she cannot prove the fourth element of the *McDonnell-Douglas* framework: that Plaintiff was treated less favorably than similarly-situated employees who were younger.[29] Defendant presents Plaintiff's deposition answer to the question of whether younger people in similar positions were treated better than her.[30] Defendant alleges that in reply, Plaintiff stated, "I can't answer that." and "I don't know how they were treated."[31] Defendant contends that because Plaintiff does not know how younger employees were treated, Plaintiff has "no evidence that Unit Directors younger than [Plaintiff] or outside of her protected class engaged in the same type of conduct which she was terminated for

---

[26] Rec. Doc. 29-2 at 20–24.

[27] *Id.* at 21–23.

[28] *Id.* at 19.

[29] *Id.*

[30] *Id.*

[31] *Id.*

but were not terminated."[32] Therefore, Defendant avers that Plaintiff cannot establish a *prima facie* case of age discrimination and her claim should be dismissed.[33]

If the Court finds that Plaintiff has presented a *prima facie* case of age discrimination, Defendant then argues that Plaintiff cannot establish that Defendant's proffered reason for termination was a pretext.[34] Defendant insists that it has offered sufficient evidence to show that poor work performance was a legitimate reason for terminating Plaintiff's employment.[35] Defendant details Plaintiff's work history since Defendant's acquisition of the hospital in 2005.[36] Defendant points to several performance evaluations by Plaintiff's first supervisor, Marsha Arabie, to support the assertion that Plaintiff was "resistant toward change" and "there were consistent performance issues with the nurses" in Plaintiff's unit.[37]

Defendant alleges that Allyson Vedros, Plaintiff's second supervisor, issued a PIP for Plaintiff on June 11, 2015.[38] Defendant states that the PIP was based on Plaintiff's failure to utilize a "nonnegotiable document," poor communication to subordinates, understaffed shifts, lack of proper documentation by Plaintiff's staff, missing medication under Plaintiff's watch, and failure to modify overtime schedules as directed by management.[39] Defendant alleges that when Vedros placed Plaintiff on the PIP, Plaintiff did not complain of age discrimination to Vedros.[40] Defendant

---

[32] *Id.* at 21.

[33] *Id.*

[34] *Id.* at 21–22.

[35] *Id.* at 22.

[36] *Id.* at 2–18.

[37] *Id.* at 3.

[38] *Id.* at 6–7.

[39] *Id.* at 5–8.

[40] *Id.* at 8.

states that Plaintiff submitted a written rebuttal in which Plaintiff alleged that Vedros had made comments during weekly meetings that seemed to target Plaintiff and another 63-year-old employee named Adams.[41] Defendant asserts, however, that in describing Vedros' comments at these meetings, "Plaintiff did not remember any specific examples when Ms. Vedros made a reference to her age. Plaintiff testified that '[i]t was in general—that she spoke of us.'"[42] Defendant maintains that Plaintiff's statements in her rebuttal are the first time Plaintiff ever mentioned age discrimination to anyone at the facility.[43]

Defendant insists that when Plaintiff met with Bayou Region CEO Tim Allen and human resources specialist Sherri McKenna about the PIP, Plaintiff did not mention age discrimination and neither executive made comments related to Plaintiff's age.[44] Defendant alleges that despite regular meetings regarding her progress on the PIP, Plaintiff's performance continued to struggle.[45] Defendant asserts that Plaintiff's third supervisor, Jane Semere, continued to note Plaintiff's failure to ensure that her department properly completed documentation, adequately updated patient families, and accurately logged employee hours.[46] Defendant contends that an outside contractor, the Studer Group, noted many of the deficiencies with Plaintiff's performance in several evaluations.[47] Defendant avers that based on the Studer Group's evaluations, Semere placed Plaintiff on a second PIP, with a warning that failure to improve could result in "'further

---

[41] *Id.* at 8–9.

[42] *Id.* at 9.

[43] *Id.* at 9–10.

[44] *Id.* at 10.

[45] *Id.* at 10–11.

[46] *Id.* at 11–12.

[47] *Id.* at 12–13.

disciplinary action up to and including termination.'"[48]  Defendant alleges that when Plaintiff continued to lack improvement under the second PIP, Semere recommended that Plaintiff apply for other positions within the Ochsner system.[49]

Defendant alleges that Plaintiff requested medical leave in March 2016, and while on leave, Plaintiff was given the option to apply for other positions, but Plaintiff chose not to.[50] Defendant states that it then terminated Plaintiff's employment for the "myriad of issues outlined above."[51] Defendant alleges that Plaintiff continued to insist that she was terminated because of age, but Plaintiff admitted that Semere was in her same age range and had never made any age-related comments about Plaintiff.[52] Defendant also contends that Plaintiff attempted to support her discrimination allegations with the names of other employees who were allegedly forced to retire because of their age.[53] Defendant argues, however, that these were solely speculations by Plaintiff because she did not know the employees' work histories, had not spoken to them about their termination, and was not involved in their termination.[54] Defendant insists that Plaintiff's "conclusory allegations, without more, are insufficient to show pretext,"[55] and for these reasons, her age discrimination claim fails.[56]

---

[48] *Id.* at 14 (quoting Rec. Doc. 29-3).

[49] *Id.* at 16.

[50] *Id.*

[51] *Id.* at 17.

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.* at 22.

[56] *Id.*

## 2.    Retaliation Claim

Defendant asserts that Plaintiff cannot present a *prima facie* case of retaliation because she cannot prove a causal link between her age discrimination complaint and her termination.[57] Defendant states that the PIP issued by Semere was supported by ample evidence of Plaintiff's poor performance, mostly generated by an independent consulting firm.[58] Additionally, Defendant highlights, Plaintiff admitted in her deposition that she never spoke with either Allen, the hospital's CEO, or Semere about her age discrimination claim.[59] Defendant contends that Semere was not Plaintiff's supervisor at the time Plaintiff made her discrimination accusations, and Semere never became aware of these allegations.[60] Defendant further avers that during Plaintiff's deposition, Plaintiff admitted that it was merely her assumption that Semere was retaliating against her.[61] Defendant argues that if neither Allen nor Semere had knowledge of Plaintiff's age discrimination claim, neither could retaliate against Plaintiff.[62]

Accordingly, Defendant maintains, Plaintiff cannot prove the necessary elements of a retaliation claim, but if the Court somehow finds that Plaintiff establishes a *prima facie* case, Plaintiff cannot prove pretext for the reasons outlined *supra*.[63] Because Defendant believes that Plaintiff cannot prove an age discrimination or retaliation claim, Defendant urges the Court to grant the motion for summary judgment.[64]

---

[57] *Id.* at 23.

[58] *Id.* at 24.

[59] *Id.* at 18.

[60] *Id.*

[61] *Id.*

[62] *Id.*

[63] *Id.* at 24–25.

[64] *Id.*

*B.*     *Plaintiff's Arguments in Opposition to the Motion*

In opposition, Plaintiff argues that the Court should deny Defendant's motion because she presents direct evidence of age discrimination.[65] Plaintiff also contends that she presents adequate evidence to support a *prima facie* case for age discrimination and retaliation, and she provides evidence of pretext on the part of Defendant.[66]

**1.     Age Discrimination Claim**

First, Plaintiff asserts that she presents direct evidence of age discrimination through the declaration of her former supervisor, Allyson Vedros.[67] Plaintiff alleges that in Vedros' declaration, Vedros states that CEO Allen wanted Plaintiff to be placed on an PIP, and then, despite Plaintiff's success on the PIP, Allen gave Vedros explicit instructions to terminate Plaintiff and other older employees.[68] Plaintiff contends that Vedros told Allen that it was wrong to terminate these employees, but Allen continued to force the task on Vedros because he wanted to target "long-term employees."[69] Plaintiff insists that Vedros was terminated shortly after she refused to terminate Plaintiff.[70] According to Plaintiff, Vedros' statements constitute direct evidence of age discrimination.[71]

---

[65] Rec. Doc. 36 at 1–2.

[66] *Id.*

[67] *Id.* at 14–15. Plaintiff notes that Allyson Vedros got married in 2015 and changed her surname to Vedros. Plaintiff utilizes the last name Vedros throughout her opposition, but for consistency across the other documents in the record, the Court will utilize the surname Vedros.

[68] *Id.* at 15 (citing Rec. Doc. 36-4).

[69] *Id.*

[70] *Id.*

[71] *Id.* at 14–15.

Next, Plaintiff contends that she presents a *prima facie* case of age discrimination because she was over the age of forty, qualified for the position, unfairly terminated, and replaced by a younger employee.[72] Plaintiff alleges that she was replaced by Krystal Reisinger, "a nurse in her late twenties, who was significantly less experienced and less qualified [than Plaintiff]."[73] Plaintiff states that Reisinger had no emergency room, critical care unit, or supervisory experience when she assumed the position.[74] Additionally, Plaintiff highlights several other individuals, such as Annette Adams, Mary Katherine, and John Flannery who were forced to move to a different position or terminated and replaced by younger employees.[75] Plaintiff argues that collectively, this evidence supports the assertion that older employees were treated disparately.[76]

Finally, Plaintiff contends that she clearly shows that Defendant's proffered reason for terminating her employment is pretextual because all of Plaintiff's evidence evinces that "Plaintiff had done an excellent job fulfilling the duties of [her] position for the previous five years."[77] Plaintiff asserts that from 2005 to 2014, Defendant had no complaints regarding Plaintiff's work performance, and Plaintiff received bonuses and pay increases whenever available.[78] Plaintiff also alleges that her emergency department was the best performing department in the Ochsner network, and Plaintiff was named Employee of the Quarter in 2014.[79] Plaintiff insists that in 2015 and through the first quarter of 2016, the St. Anne's Emergency Department was "consistently the

---

[72] *Id.* at 16–17.

[73] *Id.* at 12.

[74] *Id.*

[75] *Id.* at 17.

[76] *Id.*

[77] *Id.* at 18.

[78] *Id.* at 2–3.

[79] *Id.* at 3.

best performing" department in the Ochsner network.[80] Plaintiff claims that during Allen's testimony, Allen stated that he utilized the dashboard data to assess the performance of the hospital, so Allen was aware of Plaintiff's high performance.[81]

Plaintiff states that despite the strong performance of herself and her department, she was placed on the first PIP.[82] Plaintiff alleges that in her rebuttal to the first PIP, she addressed each of the itemized issues, explained how each of the tasks were already being completed, and detailed how she had complied with all requests.[83] Plaintiff contends that she met all of the requirements of the PIP, and though Vedros acknowledged this improvement, Allen was determined to terminate Plaintiff because he wanted to target older employees.[84] Plaintiff avers that when she met with Allen and a human resources specialist, McKenna, "Allen's disdain was palpable and he made [Plaintiff] feel extremely intimidated."[85] Plaintiff claims that despite indicating that she just wanted to do her job, Allen continued to implement the PIP.[86]

Plaintiff then contests Defendant's assertion that Semere placed Plaintiff on the second PIP based on the Studer Group's independent evaluations.[87] Plaintiff highlights the discrepancy between the dashboard data that shows excellent performance by Plaintiff's department and the "subjective amorphous criticism" of the Studer Group.[88] Plaintiff asserts that the contrast between

---

[80] *Id.* at 4.

[81] *Id.*

[82] *Id.*

[83] *Id.* at 5.

[84] *Id.* at 6.

[85] *Id.*

[86] *Id.*

[87] *Id.* at 19.

[88] *Id.* at 9.

her objective performance over the course of her 30-year career and the sudden, subjective accusations by Studer and Semere reveal that allegations of poor work performance were concocted as pretext for the discrimination.[89] Plaintiff insists that the Studer Group's records were only used to mask Defendant's ulterior motive to push Plaintiff out of her position.[90]

As further evidence of this ulterior motive, Plaintiff presents the deposition testimony of Semere, wherein Semere "conceded that after issuance of the February 2016 PIP, aside from a few perfunctory regular meetings, she made absolutely no effort to meet with [Plaintiff] to coach her…or otherwise display any real concern for [Plaintiff]'s efforts to satisfy her employer's stated needs."[91] Plaintiff insists that if poor performance was really the issue, Semere would have invested in her improvement and made some attempt to help her meet the PIP goals.[92] Because Semere did not show concern, Plaintiff argues, this evinces that poor performance was a pretext for the discrimination and Semere's only motive was to get rid of Plaintiff on unfair terms.[93] Thus, Plaintiff avers that she adequately proves that Defendant's proffered reason for her termination was pretextual.[94]

### 2.       Retaliation Claim

Plaintiff also asserts that she presents a *prima facie* case for retaliation.[95] First, Plaintiff alleges that she engaged in protected activity by asserting in her rebuttal that the first PIP was

---

[89] *Id.* at 19.

[90] *Id.*

[91] *Id.*

[92] *Id.*

[93] *Id.* at 20.

[94] *Id.*

[95] *Id.* at 21.

issued based on age discrimination.[96] Second, Plaintiff argues that Defendant's "nit-picking criticism of her work and issuance of a second PIP just a few months later" constitute adverse employment actions.[97] Third, Plaintiff contends that the causation element is established by: (1) the proximity in time between her age discrimination allegations and the implementation of the second PIP, and (2) the fact that the second PIP was not a genuine attempt to help Plaintiff improve.[98] Plaintiff alleges that the falsity of the second PIP is revealed by Semere's "dismissive and dispassionate testimony" regarding Plaintiff's work performance.[99] Therefore, Plaintiff argues, Defendant only implemented the second PIP so close to the time of Plaintiff's age discrimination complaints because the second PIP was really retaliatory.[100]

Next, Plaintiff responds to Defendant's assertion that Semere could not have retaliated against Plaintiff because Semere was unaware of Plaintiff's age discrimination allegations.[101] Plaintiff insists that Allen received a copy of her rebuttal that contained the discrimination allegations, and Allen, not Semere is the person who directed that Plaintiff be placed on the second PIP and ultimately terminated. Therefore, Plaintiff contends, Defendant can be held liable for retaliation because Allen knew that Plaintiff had engaged in protected activity and Allen used Semere to retaliate against Plaintiff for this activity.[102] For these reasons, Plaintiff insists that she

---

[96] *Id.*

[97] *Id.*

[98] *Id.*

[99] *Id.*

[100] *Id.*

[101] *Id.* at 22.

[102] *Id.*

established both a retaliation and an age discrimination claim, and the Court should deny the motion for summary judgment.[103]

## C.    *Defendant's Arguments in Further Support of the Motion*

In reply, Defendant argues that Plaintiff does not present direct evidence of discrimination and fails to establish both a *prima facie* case and pretext for either of her claims.[104]

### 1.    Age Discrimination Claim

First, Defendant asserts that Plaintiff does not present direct evidence of discrimination because Plaintiff "misstates two salient facts."[105] One misstatement, according to Defendant, is that Allen was not the ultimate decisionmaker in deciding to terminate Plaintiff.[106] Defendant alleges that in Semere's declaration, Semere states that it was her decision to terminate Plaintiff, and in Allen's deposition, he clarified that he usually has "no role" in terminating staff.[107] Defendant also contends that Plaintiff misconstrued Vedros' declaration because no where in the declaration does Vedros say that Allen told her to terminate employees over the age of forty.[108] Defendant insists that Vedros only states that Allen told her to terminate "long-term" employees, and "long-term" is a vague statement that does not equate with older employees.[109] Therefore, Defendant argues that Plaintiff does not provide any direct evidence of age discrimination.[110]

---

[103] *Id.*

[104] Rec. Doc. 40.

[105] *Id.* at 1.

[106] *Id.* at 2.

[107] *Id.*

[108] *Id.* at 2–3.

[109] *Id.* at 2.

[110] *Id.*

Defendant then contends that Plaintiff fails to present a *prima facie* case of age discrimination because Plaintiff does not provide evidence that a similarly situated employee outside of her protected class was treated more favorably.[111] Defendant avers that as evidence for this fourth element of the *prima facie* case, Plaintiff states that she was replaced by an individual in her late twenties or early thirties, but Defendant asserts that Plaintiff misrepresents who actually replaced her.[112] Defendant states that after Plaintiff was terminated, an individual named Kelly Dufrene, who was 58-years old at the time and only six years younger than Plaintiff, assumed Plaintiff's position.[113] Defendant avers that Reisenger only filled the position after Dufrene decided that she did not want to continue in the director role.[114] Thus, Defendant argues, Plaintiff was not initially replaced by someone significantly younger, as Plaintiff attempts to represent.[115] Further, Defendant asserts that Plaintiff relies on the declaration of Vedros to establish the identity and age of Plaintiff's replacement, but Defendants argues that Vedros has no personal knowledge of these facts because she had been terminated six months prior.[116] Thus, Defendant argues, Vedros' declarations regarding Plaintiff's replacement should not be considered.[117]

Defendant also alleges that as further evidence for the fourth element of a *prima facie* case, Plaintiff presents "extremely vague allegations that other employees over the age of forty were terminated or demoted."[118] Yet, Defendant asserts, Plaintiff provides "no details or record evidence

---

[111] *Id.*

[112] *Id.* at 4.

[113] *Id.*

[114] *Id.*

[115] *Id.*

[116] *Id.*

[117] *Id.* at 4–5.

[118] *Id.* at 3.

related to any of these employees," and Plaintiff admits that she "'lacked full details as to the circumstances of each.'"[119] Defendant insists that Plaintiff's lack of evidence is insufficient to establish a *prima facie* case.[120]

Next, Defendant contends that Plaintiff has not established pretext because she ignores the fact that multiple supervisors, and not just Semere, noted deficiencies in Plaintiff's performance.[121] Defendant cites statements from Arabie and Vedros who noted Plaintiff's resistance to change, difficulty with employee engagement, and failure to follow certain requested processes.[122] Further, Defendant highlights, several of these criticisms were noted before Semere and Allen had arrived at St. Anne Hospital.[123] Defendant also points out that though Plaintiff labeled the Studer Group's evaluations as subjective and amorphous, Plaintiff "did not deny any of the critiques levied by the Studer Group," and Plaintiff has actually "admitted to agreeing with most of the recommendation and observations made by the independent Studer coach."[124] Finally, Defendant asserts that though Plaintiff relies on the dashboard data to support the argument that her department was performing well, the dashboard data addresses the performance of the entire department but does not reference Plaintiff's specific performance.[125]

Defendant ends its arguments related to the age discrimination claim by asserting that Plaintiff has misstated the record on multiple occasions, including when Plaintiff stated the following: that Allen directed Vedros to terminate employees over forty, that Allen "ordered"

---

[119] *Id.* (citing Rec. Doc. 36 at 27).

[120] *Id.* at 4–5.

[121] *Id.* at 5–8.

[122] *Id.*

[123] *Id.*

[124] *Id.* at 7–8.

[125] *Id.* at 8.

Vedros to terminate Plaintiff, and that Vedros disagreed with Allen's directive to place Plaintiff on the PIP.[126] Defendant contends that none of these assertions are present in Vedros' declaration or anywhere in the record, and Plaintiff purposefully misstates the record.[127]

### 2. Retaliation Claim

Regarding Plaintiff's retaliation claim, Defendant argues that Plaintiff fails to prove that there is any dispute regarding the fact that Semere was the only person that decided to terminate Plaintiff, and Semere was unaware of Plaintiff's age discrimination allegations.[128] Defendant contends that this represents a lack of causation, and because Plaintiff does not show any dispute regarding the lack of causation, Plaintiff cannot present a *prima facie* case for retaliation.[129] For these reasons, Defendant argues that Plaintiff does not present a claim for either age discrimination or retaliation, and the Court should grant the motion for summary judgment.[130]

### D. *Plaintiff's Arguments in Further Opposition to the Motion*

In the sur-reply, Plaintiff asserts that she has established her claims for discrimination and retaliation, but even if she falls short of completely proving her case, there are disputes of material fact that warrant denial of the motion for summary judgment.[131]

---

[126] *Id.* at 8–9.

[127] *Id.* at 10.

[128] *Id.* at 10.

[129] *Id.*

[130] *Id.*

[131] Rec. Doc. 46 at 1–2.

### 1. Age Discrimination Claim

First, Plaintiff asserts that Vedros' testimony serves as sufficient direct evidence of discrimination.[132] Plaintiff notes that Defendant challenged the meaning of Vedros' statements regarding Allen's desire to target older employees.[133] To clarify Vedros' testimony, Plaintiff attaches a second declaration by Vedros to the sur-reply.[134] Plaintiff alleges that in the second declaration, Vedros states: (1) that she believes Allen terminated Vedros' employment because he was upset that Vedros refused to terminate Plaintiff and other employees over 40, and (2) after Vedros' termination, Vedros kept track of all terminated employees over age 40 who were initially on Allen's over 40 years of age termination list.[135] Plaintiff insists that these declarations by Vedros are direct evidence of age discrimination, and this warrants denial of the motion.[136]

Next, Plaintiff argues that she does present evidence in support of the fourth element of a *prima facie* case because, despite Defendant's attempt to distort the facts, Plaintiff was actually replaced by a significantly younger employee.[137] Plaintiff acknowledges that Kelly Dufrene immediately replaced her in the director position, but Plaintiff insists that Dufrene was merely an interim leader.[138] Plaintiff contends that ultimately, Reisinger, who is in her late twenties or early thirties, replaced Plaintiff as the permanent director of the unit.[139]

---

[132] *Id.* at 3–4.

[133] *Id.*

[134] Rec. Doc. 46-1.

[135] Rec. Doc. 46 at 3.

[136] *Id.* at 3–4.

[137] *Id.* at 7.

[138] *Id.*

[139] *Id.*

Then, Plaintiff asserts that she presents sufficient evidence of pretext because the dashboard data and other evidence of her department's performance clearly convey that poor performance was not a genuine issue.[140] Plaintiff contests Defendant's assertion that supervisor reviews and the Studer Group findings were the primary tools utilized to make decisions.[141] Plaintiff insists that during Allen's deposition, he specifically stated that he relied on dashboard data to assess the status of hospital operations.[142] Plaintiff contends that if Allen were relying on dashboard data that showed high performance by her department, he had no possible reason to take adverse action based on Plaintiff's performance, and thus "poor performance" was a pretext for discrimination.[143]

Plaintiff also disputes Defendant's assertion that Arabie noted poor performance by Plaintiff.[144] Plaintiff alleges that she was in contact with Arabie and had typed up Arabie's declaration, but Arabie may have been unduly influenced into a "change of heart" that made her not want to sign the declaration.[145] Plaintiff attaches to the sur-reply a declaration from Plaintiff's counsel, G. Karl Bernard, wherein Bernard attests to his attempts to obtain Arabie's declaration and he attaches the proposed declaration.[146] Plaintiff contends that she would subpoena Arabie to testify at trial, and Arabie's testimony would include statements that "as [Plaintiff]'s supervisor for more than twenty years, she never saw reason to place Plaintiff on a Performance Improvement Plan; she never recommended that [Plaintiff] be terminated or removed from her position; and

---

[140] *Id.* at 5–7.

[141] *Id.* at 5.

[142] *Id.*

[143] *Id.* at 5–6.

[144] *Id.* at 6.

[145] *Id.*

[146] Rec. Doc. 46-2.

despite any criticisms that she may have stated in her reviews over the years, [Plaintiff] consistently exceeded Ms. Arabie's expectations of her position."[147]

Next, Plaintiff contends that even if her evidence is not enough to fully establish pretext, the evidence reveals a genuine dispute of fact on Plaintiff's history of performance prior to her termination.[148] Also, Plaintiff asserts, Defendant's arguments in the motion are heavily reliant on attacks on Vedros' credibility.[149] According to Plaintiff, the continued issues of fact and credibility determinations are matters that are both inappropriate for summary judgment and should be decided by a trier of fact.[150] Thus, Plaintiff argues, the Court should deny summary judgment.

### 2. Retaliation Claim

Finally, Plaintiff notes that Defendant asserts that Allen was not involved in terminating Plaintiff, but Plaintiff argues that based on Allen and Semere's statements in their depositions, Allen was either required to approve of Semere's decision or Allen implicitly sanctioned the decision because he was the final authority over all of Semere's actions.[151] Thus, proffers Plaintiff, Allen was involved at some level in terminating Plaintiff, and this supports the assertion that he acted against Plaintiff in retaliation.[152] Therefore, Plaintiff contends that she presents a retaliation claim and the Court should deny the motion for summary judgment.[153]

---

[147] *Id.*

[148] *Id.*

[149] *Id.* at 2–3.

[150] *Id.*

[151] *Id.* at 4.

[152] *Id.*

[153] *Id.*

### E. *Defendant's Sur-Reply in Further Support of the Motion and Defendant's Request to Strike*

#### 1. Arguments in Support of the Motion

In its sur-reply, Defendant first argues that "Plaintiff should not be allowed to submit a subsequent declaration with new 'evidence' with her Surreply," but if the Court decides to consider the new evidence, Defendant should be allowed to address the associated arguments.[154] Defendant contends that even with Vedros' updated declaration, Plaintiff still does not present evidence of direct discrimination.[155] Defendant alleges that in the declaration, Vedros does not assert that Allen instructed or suggested that Vedros terminate Plaintiff and other employees because of their age.[156] Defendant asserts that Vedros only states that Allen "'wanted [her] to terminate [Plaintiff's] employment along with several employees over the age of forty.'"[157] Defendant contends that this statement requires a person to draw inferences or presumptions about Allen's intentions, and inferences cannot serve as direct evidence.[158]

Defendant then asserts that Plaintiff does not present a *prima facie* case of age discrimination because, despite Plaintiff's attempt to label Reisinger as her ultimate replacement, the fact remains that Plaintiff was immediately replaced by Dufrene, who was only six years younger than Plaintiff.[159] Defendant also argues that Plaintiff fails to prove pretext because the dashboard data that she continuously relies on does not refer to Plaintiff's specific performance

---

[154] Rec. Doc. 49 at 1–2.

[155] *Id.*

[156] *Id.* at 2.

[157] *Id.* (quoting Rec. Doc. 46-1).

[158] *Id.*

[159] *Id.* at 5.

and the data does not nullify the fact that all of Plaintiff's supervisors, including Arabie, noted issues with Plaintiff's performance.[160]

Finally, Defendant contends that Plaintiff fails to state a claim for retaliation because she still cannot prove that Allen was the decisionmaker who terminated Plaintiff's employment.[161] Defendant argues that Plaintiff tries to equate Semere's "simply checking in with a supervisor" regarding termination as evidence that the supervisor was influential in the termination.[162] Defendant insists that this is not accurate; Defendant avers that Semere was still the "ultimate decision maker on the termination."[163] For these reasons, Defendant asserts that Plaintiff cannot present an age discrimination or retaliation claim, and the Court should grant the motion for summary judgment.[164]

### 2. Objections to Plaintiff's Exhibits

Also in its sur-reply, Defendant submits objections to several statements in the two declarations that Plaintiff attaches to her sur-reply.[165] Defendant requests that the Court strike paragraphs 31–36 of Exhibit 1, Vedros' second declaration and the entirety of Exhibit 2, Plaintiff's counsel's entire declaration.[166] Regarding Vedros' declaration, Defendant avers that in paragraphs 31–33, Vedros describes how she stayed in touch with former co-workers via phone, text, and emails and used these communications to keep track of employees terminated by Defendant.[167]

---

[160] *Id.* at 3–4.

[161] *Id.* at 2–3.

[162] *Id.*

[163] *Id.* at 3.

[164] *Id.* at 8.

[165] *Id.* at 6–8.

[166] *Id.* at 6.

[167] *Id.* at 6–7.

Defendant contends that these statements by Vedros constitute inadmissible hearsay under Federal Rule of Evidence 801 and they should be struck from the record.[168] Defendant also alleges that Vedros' statements in paragraphs 34-36 regarding Plaintiff's replacement were not based on personal knowledge because Vedros had been terminated seven months prior to the time that Plaintiff's replacement was named.[169] Defendant asserts that this lack of personal knowledge violates Rule 56 and these statements should be stricken.[170]

Next, Defendant objects to the entirety of Exhibit 2, the declaration of Plaintiff's counsel, G. Karl Bernard.[171] Defendant contends that "Mr. Bernard's declaration is not related to attorney's fees, discovery or any other topic an attorney representing a party would normally submit."[172] Defendant alleges that Bernard's declaration mainly refers to the merits of the case by referencing Arabie, her supposed declaration that was never executed, and what Arabie would testify to at trial.[173] Defendant avers that "it is completely improper for an attorney representing a party in a case to submit a declaration regarding what a witness will allegedly testify to."[174] Defendant asserts that this is inadmissible hearsay and an improper attempt by Plaintiff's counsel to sneak in testimony that he was not able to obtain via acceptable methods.[175] For these reasons, Defendant requests that Bernard's entire declaration be stricken from the record.[176]

---

[168] *Id.* at 7.

[169] *Id.*

[170] *Id.*

[171] *Id.* at 7–8.

[172] *Id.*

[173] *Id.*

[174] *Id.* at 8 (citing *In re DirecTech Southwest, Inc.*, 2009 U.S. Dist. LEXIS 139461 (E.D. La. Nov. 19, 2009)).

[175] *Id.*

[176] *Id.* at 8.

# III. Legal Standard

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[177] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[178] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[179] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[180] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[181]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[182] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will

---

[177] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[178] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[179] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[180] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[181] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[182] *Celotex*, 477 U.S. at 323.

bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[183] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[184] In doing so, the nonmoving party may not rest upon mere allegations or denials in its pleadings, but rather must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[185]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[186] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[187]

---

[183] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (citing *Little v. Liquid Air Corp.*, 939 F.2d 1293, 1299 (5th Cir. 1991)).

[184] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[185] *Morris*, 144 F.3d at 380 (citing *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992); *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[186] *Little*, 37 F.3d at 1075.

[187] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

# IV. Analysis

## A.    *Objections to Plaintiff's Evidence*

Pursuant to Federal Rule of Civil Procedure 56(c)(2), on a motion for summary judgment, a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[188] According to the comments following the revised rule:

> Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted to the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated…[189]

Here, Defendant presents objections to the two declarations that Plaintiff attached to her sur-reply.[190] First, Defendant contends that in Exhibit 1, Vedros' declaration, paragraphs 31–33 and 36 constitute inadmissible hearsay under Federal Rule of Evidence 801 because the statements refer to information that Vedros obtained from others.[191] Specifically, Defendant alleges that the following statements by Vedros are hearsay: (1) that she stayed in touch with former co-workers via phone, text, and emails; (2) that she used these communications to keep track of employees terminated by Defendant; and (3) that after Plaintiff was terminated, many employees at St. Anne's talked about Plaintiff's replacement.[192]

---

[188] Fed. R. Civ. P. 56(c)(2).

[189] *Id.*

[190] Rec. Doc. 47-2 at 6–8.

[191] *Id.* at 7.

[192] *Id.* at 6–7.

Federal Rule of Evidence 801(c) defines hearsay as "a statement that the declarant does not make while testifying at the current trial or hearing; and a party offers in evidence to prove the truth of the matter asserted in the statement." In paragraphs 31–33 and 36, Vedros does not repeat statements made or information conveyed to her by other individuals. Vedros merely describes her actions in communicating with former colleagues and keeping track of these communications. Vedros does not offer any out of court statements in the declaration. Vedros' statements simply describe her experiences and actions. Thus, the Court will overrule Defendant's hearsay objections to paragraphs 31–33 and 36 of Vedros' declaration.

Defendant also contends that paragraphs 34–36 should be stricken because they are not based on personal knowledge, in violation of Federal Rule of Civil Procedure 56.[193] In arguing lack of knowledge, Defendant asserts that Vedros had been terminated seven months prior to the time that Plaintiff's replacement was named, and Vedros "does not lay any foundation for how she is aware of Plaintiff's replacement or the process used to name Plaintiff's replacement."[194]

Under Federal Rule of Civil Procedure 56(c)(4), a "declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the…declarant is competent to testify on the matters stated." Personal knowledge may be proven by a witness' own testimony or reasonably inferred from her position or the nature of her participation in the matters to which she swears.[195] Here, Vedros previously worked at St. Anne's with several staff members. It can be reasonably inferred

---

[193] *Id.* at 7.

[194] Rec. Doc. 47-2 at 7.

[195] *See DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005) ("The Ninth Circuit has also found it proper in the summary judgment context for district courts to rely on affidavits where the affiants' "personal knowledge and competence to testify are reasonably inferred from their positions and the nature of their participation in the matters to which they swore.").

that Vedros spoke with these individuals personally to obtain details regarding how and when Plaintiff was replaced. Therefore, the Court overrules Defendant's objections to paragraphs 34–36 for lack of knowledge because Vedros' knowledge can be reasonably inferred.

Defendant also objects to the submission of Exhibit 2, a declaration of Plaintiff's counsel, G. Karl Bernard.[196] Defendant contends that "Mr. Bernard's declaration is not related to attorney's fees, discovery or any other topic an attorney representing a party would normally submit."[197] Defendant alleges that Bernard's declaration mainly refers to the merits of the case by referencing Arabie, her supposed declaration that was never executed, and what Arabie would testify to at trial.[198] Defendant avers that "it is completely improper for an attorney representing a party in a case to submit a declaration regarding what a witness will allegedly testify to."[199] Defendant asserts that this statement is inadmissible hearsay and an improper attempt by Plaintiff's counsel to sneak in testimony that he was not able to obtain via acceptable methods.[200] For these reasons, Defendant requests that Bernard's entire declaration be stricken from the record.[201]

As stated above, a "declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the…declarant is competent to testify on the matters stated."[202] In Bernard's declaration, he states that he is competent to testify to the matters in the document, and it can be inferred that many of the facts are based on Bernard's personal knowledge from working on the case. Further,

---

[196] *Id.* at 7–8.

[197] *Id.*

[198] *Id.*

[199] *Id.* at 8 (citing *In re DirecTech Southwest, Inc.*, 2009 U.S. Dist. LEXIS 139461 (E.D. La. Nov. 19, 2009)).

[200] *Id.*

[201] *Id.* at 8.

[202] Fed. R. Civ. P. 56(c)(4).

Defendant does not identify why many of the statements in the declaration would be inadmissible in evidence. Thus, the Court will not strike Bernard's entire declaration.

The Court notes, however, that in paragraph 13 of the declaration, Bernard describes a statement by Arabie regarding why Arabie did not want to execute her own declaration. This statement is hearsay, and Plaintiff does not proffer any reason why this statement would be admissible at trial under an exception to the hearsay rule. Similarly, the unexecuted affidavit of Arabie that Bernard attaches to this declaration is also hearsay and must be stricken from the record. Accordingly, the Court overrules Defendant's objection to the entirety of Bernard's declaration, while sustaining the objection to paragraph 13 of the declaration and the exhibits attached to the declaration.

In conclusion, the Court overrules Defendant's objections to Vedros' declaration. The Court sustains Defendant's objections to paragraph 13 of Bernard's declaration and the exhibits attached to Bernard's declaration, while overruling objections to the remainder of Bernard's declaration.

### B.    *Summary Judgment on Plaintiff's Claims*

Defendant argues that the Court should dismiss Plaintiff's claims for age discrimination and retaliation under the ADEA because Plaintiff does not provide direct evidence of age discrimination, Plaintiff cannot establish a *prima facie* case for either claim, and Plaintiff cannot establish that Defendant's proffered reason for termination—poor work performance—was pretext for either age discrimination or retaliation.[203] In opposition, Plaintiff asserts that she presents direct evidence of discrimination, establishes a *prima facie* case and pretext for both claims, and genuine

---

[203] Rec. Doc. 29-2.

issues of material fact remain on several key issues.[204] The Court will address each argument in turn.

### 1. Age Discrimination Claim

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."[205] When a plaintiff alleges disparate treatment, "liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision."[206] In order to state a valid claim under the ADEA, the plaintiff "has the burden of persuasion to show 'that age was the 'but-for' cause of [her] employer's adverse action.'"[207]

Allegations of intentional employment discrimination can be established by either circumstantial or direct evidence.[208] If a plaintiff "produces direct evidence that discriminatory animus played a role in the decision at issue, the burden of persuasion shifts to the defendant, who must prove that it would have taken the same action regardless of discriminatory animus."[209] If, however, a "plaintiff produces only circumstantial evidence of discrimination, the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*,[210] guides [a court's] inquiry."[211]

---

[204] Rec. Doc. 36.

[205] *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 141 (2000) (citing 29 U.S.C. § 623(a)(1)).

[206] *Id.* (quoting *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610 (1993)).

[207] *Jackson v. Cal-W. Packaging Corp*., 602 F.3d 374, 377 (5th Cir. 2010) (citing *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167 (2009)).

[208] *Id.* (citing *Sandstad v. CB Richard Ellis, Inc*., 309 F.3d 893, 896 (5th Cir. 2002)).

[209] *Sandstad,* 309 F.3d at 896 (citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 252–53 (1989)).

[210] 411 U.S. 792, 802 (1973).

[211] *Sandstad,* 309 F.3d at 896.

In the opposition, Plaintiff contends that she proves her age discrimination claim with both direct evidence and circumstantial evidence. The Court will first analyze Plaintiff's direct evidence of age discrimination.

### a. Direct Evidence of Age Discrimination

"Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions."[212] "'In order for an age-based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee.'"[213] Workplace comments that are alleged to be direct evidence of discrimination are only considered as such if the comments are: "1) age related, 2) proximate in time to the employment decision, 3) made by an individual with authority over the employment decision at issue, and 4) related to the employment decision at issue."[214] If the alleged workplace comment does not meet these four requirements, the comment cannot be considered direct evidence of discrimination, and is treated as a "stray remark."[215]

Here, Plaintiff alleges that while Vedros was Plaintiff's supervisor, Allen, the hospital CEO, instructed Vedros to terminate long-term employees such as Plaintiff.[216] In her sur-reply, Plaintiff presents a revised declaration of Vedros, wherein Vedros states the following: "Annette

---

[212] *Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 958 (5th Cir. 1993).

[213] *Moss v. BMC Software, Inc.,* 610 F.3d 917, 929 (5th Cir. 2010) (quoting *EEOC v. Texas Instruments, Inc.,* 100 F.3d 1173, 1181 (5th Cir. 1996)).

[214] *Moss,* 610 F.3d at 929 (quoting *Medina v. Ramsey Steel Co., Inc.,* 238 F.3d 674, 683 (5th Cir.2001).

[215] *Id.*

[216] Rec. Doc. 36 at 14–15.

Adams, like [Plaintiff], was a senior management level employee, over the age of 40, at St. Anne that Tim Allen wanted me to terminate."[217] "Notwithstanding [Plaintiff's] performance, Tim Allen wanted me to terminate [Plaintiff's] employment along with several other employees over the age of forty, without any consideration for their actual job performance."[218] "When pressed to terminate these older employees, I expressed to Mr. Allen that I thought what he was attempting to force me to do was wrong."[219] "It is my belief that one of the reasons why I was terminated was because I refused to terminate [Plaintiff] and other senior employees over the age of 40 at St. Anne General Hospital."[220]

In analyzing whether these allegations constitute direct evidence of discrimination, the Court first notes that Plaintiff does not present any evidence of a comment made by Allen. Plaintiff does not proffer a statement by Allen that used the term "long-term" or allege that Allen made a direct comment about employees over 40. Rather, Vedros summarizes what she believed Allen wanted her to do. This is not a comment as typically analyzed in the Fifth Circuit as direct evidence.[221] Further, even if Allen made such comments, they are not direct and unambiguous.[222] A reasonable jury would have to draw inferences or make presumptions about what Allen may have intended. Therefore, Vedros' interpretations of her discussion with Allen do not meet the

---

[217] Rec. Doc. 46-1 at 3.

[218] *Id.* at 3–4.

[219] *Id.* at 4.

[220] *Id.* at 2.

[221] *See Jackson,* 602 F.3d at 380–81 (manager told plaintiff's coworker that "he was going to be in charge of all the plants when that old, gray-haired fart retired"); *Moss,* 610 F.3d at 929 (supervisor told plaintiff that she wanted to hire someone at a "more junior" level); *E.E.O.C. v. Texas Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996) (personnel director told plaintiff, "it's just that you've reached that age and years of service that we can bridge you to retirement."); *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993) (terminating manager told employee, "Cliff, I hope when I get to your age, somebody does the same thing for me.").

[222] *Moss*, 610 F.3d at 929.

criteria for direct evidence and are thus insufficient to defeat summary judgment. Accordingly, the Court moves to Plaintiff's circumstantial evidence of age discrimination.

### b. Age Discrimination under the Burden-Shifting Framework

Courts in the Fifth Circuit analyze circumstantial evidence of age discrimination through the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*.[223] Under the *McDonnell Douglas* analysis, a plaintiff must first establish a *prima facie* case of discrimination based on age.[224] "If the plaintiff successfully makes out a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination."[225] After the employer meets this burden, the plaintiff must prove that the employer's proffered reason for the termination was not its true reason, but was a pretext for discrimination.[226]

### i. Prima Facie Case

To establish a prima facie case of age discrimination under *McDonnell Douglas*, a plaintiff must show that: "(1) [s]he was discharged; (2) [s]he was qualified for the position; (3) [s]he was within the protected class at the time of discharge; and (4) [s]he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of h[er] age."[227]

---

[223]*Jackson*, 602 F.3d at 378 ("[W]e are bound by our circuit precedent applying *McDonnell Douglas* to age discrimination cases.") (citing *Baker v. Am. Airlines, Inc.,* 430 F.3d 750, 753 (5th Cir. 2005); *Machinchick v. PB Power, Inc.,* 398 F.3d 345, 350 (5th Cir. 2005); *Patrick v. Ridge,* 394 F.3d 311, 315 (5th Cir. 2004); *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 896–97 (5th Cir. 2002); *Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 957 (5th Cir. 1993)); *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015); *Squyres v. Heico Companies, L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015).

[224] *Goudeau,* 793 F.3d at 474 (quoting *Machinchick v. PB Power, Inc.,* 398 F.3d 345, 350 (5th Cir. 2005)).

[225] *Id.*

[226] *Id.* (quoting *Squyres,* 782 F.3d at 231 (quoting *Reeves,* 530 U.S. at 143)).

[227] *Goudeau,* 793 F.3d at 474 (quoting *Machinchick v. PB Power, Inc.,* 398 F.3d 345, 350 (5th Cir. 2005)).

Here, Plaintiff asserts that she presents a *prima facie* case of discrimination because she shows that: (1) at the time of termination, she was over the age of forty, (2) she was qualified for the position, as evidenced by her thirty-year record of successful performance, and (3) she suffered an adverse employment action when Defendant terminated her from her position.[228] Plaintiff contends that the parties agree that the first three prongs are established, and the only element in contention is whether Plaintiff has proven the fourth element: that Plaintiff was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group.[229] Plaintiff avers that she has established the fourth element by showing that she was replaced by Krystal Reisinger, a nurse in her late twenties or early thirties, and other individuals over the age of forty were terminated or demoted in an "adverse manner."[230]

Defendant does not contest that Plaintiff has established the first three elements of a *prima facie* case.[231] Defendant's motion rests on the argument that Plaintiff has offered no evidence that she was treated differently than similarly situated individuals outside her protected class.[232] Specifically, Defendant contends that Plaintiff cannot present evidence of younger employees who were similarly situated, yet treated more favorably than Plaintiff.[233] The Court need not contend with Defendant's argument, however, because evidence of a similarly situated person being treated more favorably is not the only means of proving the fourth element of a *prima facie* case. Per Fifth Circuit precedent, a Plaintiff can show that "'[s]he was either i) replaced by someone outside the

---

[228] Rec. Doc. 36 at 15–17.

[229] *Id.* at 16.

[230] *Id.* at 17.

[231] Rec. Doc. 29-2 at 20–21.

[232] *Id.*

[233] *Id.*

protected class, ii) replaced by someone younger, or iii) otherwise discharged because of h[er] age.'"[234] Here, Plaintiff has chosen to argue that she was replaced by someone younger.[235] Thus, the Court will analyze whether Plaintiff provides sufficient evidence to support this element.

Plaintiff asserts that after her termination, she was replaced by Krystal Reisinger, a nurse "half her age" who was believed to be in her "early thirties or late twenties."[236] Defendant alleges, however, that Plaintiff was not replaced by a younger person because Reisinger was Plaintiff's second replacement.[237] According to Defendant, Plaintiff was initially replaced by Kelly Dufrene, a 58-year-old nurse.[238] Both parties rely on the deposition transcript of Plaintiff's former supervisor, Jane Semere, to support their factual assertions regarding the age of Plaintiff's replacement. Thus, the Court looks to the deposition of Semere for clarification on the nature of Plaintiff's replacement.

When asked during her deposition whether Plaintiff was replaced, Semere stated that Plaintiff was initially replaced by an interim leader named Kelly Dufrene.[239] Semere testified that she "had asked [Dufrene] to step in and be an interim leader, but she was in there for a few months. And she didn't want to stay in that position, and so then we put the position up for applicants."[240] Semere then testified that Reisinger permanently took over the position after Dufrene left, and Reisinger was "probably early 30s or late 20s."[241]

---

[234] *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004) (quoting *Palasota v. Haggar Clothing Co.,* 342 F.3d 569, 576 (5th Cir. 2003)).

[235] Rec. Doc. 36 at 17.

[236] *Id.*

[237] Rec. Doc. 40 at 4.

[238] *Id.*

[239] Rec. Doc. 36-6 at 50.

[240] *Id.*

[241] *Id.* at 51.

This testimony by Semere creates a question of whether an interim replacement, who was six years younger than Plaintiff, and a permanent replacement, who was at least thirty years younger than Plaintiff, are sufficient evidence of Plaintiff being replaced by someone younger. The Fifth Circuit has not addressed the question of whether the Court should look to the interim replacement or the permanent replacement in determining whether a plaintiff has established a *prima facie* case of discrimination. Therefore, this Court will consider both replacements.

The Court begins by examining Plaintiff's permanent replacement, Krystal Reisinger.[242] In Semere's deposition, Semere testifies that Reisinger was "probably [in her] early 30s or late 20s."[243] It is well-settled among courts that a substantial age difference between a terminated employee and her replacement is sufficient to create a presumption of age discrimination.[244] As Plaintiff was 64-years-old at the time of her termination, and Reisinger was at least 30 years younger, the significant age difference between Plaintiff and Reisinger would establish a *prima facie* claim for age discrimination.

Turning to Kelly Dufrene, Plaintiff's interim replacement, Defendant states in its briefing that Dufrene was only six years younger than Plaintiff and that this is important to the analysis of whether Plaintiff establishes a *prima facie* case, yet, Defendant does not cite any authority or provide any support for why a six-year age difference does not support a *prima facie* case. When addressing an age differential of five or six years between a plaintiff and a replacement, the Fifth

---

[242] Rec. Doc. 36 at 17.

[243] Rec. Doc. 36-6 at 51.

[244] *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) ("[T]he fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination.."); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004) (noting that inference of age discrimination is created when person is replaced by someone significantly younger); *Flanner v. Chase Inv. Servs. Corp.*, 600 F. App'x 914, 919 (5th Cir. 2015) (finding that plaintiff, who was 59, had presented a prima facie case because one of his replacements was the substantially younger age of 32).

Circuit has explicitly noted that it "has not settled on a standard for what age difference qualifies as 'substantially younger' such that an inference of age discrimination may be made to establish a prime facie case."[245]

In *Bienkowski v. American Airlines*, the Fifth Circuit found that a plaintiff can establish a *prima facie* case of age discrimination where the plaintiff is replaced by a younger worker, even if the younger worker is also within the protected class.[246] However, in *Bienkowski*, the court also found that such a showing is not necessarily sufficient to prove a *prima facie* case, and the general requirement is that a plaintiff must show that he was replaced by a worker "sufficiently younger in the context of his employment to permit an inference of age discrimination."[247] The Fifth Circuit in *Bienkowski* found that the five year age difference between the plaintiff and the new employee, along with the fact that the replacement worker was the same age, fifty-four, as the average worker in the plaintiff's position, created a close question of whether the plaintiff had established a *prima facie* case.[248] Rather than decide this "close question," the Fifth Circuit "prefer[red] to factor in the relative ages of [the plaintiff] and his colleagues as evidence on [the ultimate issue of intentional age discrimination]."[249]

Following the Fifth Circuit's decision in *Bienkowski*, the Supreme Court decided *O'Connor v. Consolidated Coin Caterers Corp.*[250] In *O'Connor*, the Supreme Court held that merely being replaced by someone outside the protected class is not sufficient to establish a *prima*

---

[245] *Flanner*, 600 F. App'x at 919 (citing *Rachid*, 376 F.3d at 313; *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503 (5th Cir. 1988)).

[246] *Bienkowski*, 851 F.2d at1506.

[247] *Id.*

[248] *Id.*

[249] *Id.*

[250] 517 U.S. 308 (1996).

*facie* case; rather, an employee demonstrates an inference of age discrimination when he is replaced by an employee "significantly younger."[251] Since *O'Connor*, the Fifth Circuit has not clearly defined what constitutes "significantly younger," but the court first confronted the issue in *Rachid v. Jack in the Box, Inc.*[252] In *Rachid*, the parties contested whether a five-year age difference was "significant" or "substantial" under *O'Connor*.[253] The Fifth Circuit acknowledged that a five-year difference continued to be a "close question," but the court declined to reach the issue because the plaintiff's other evidence of intentional discrimination easily established a *prima facie* case.[254]

The Fifth Circuit again faced a "close question" in *Flanner v. Chase Investment Services Corp.*[255] In *Flanner*, the 59-year-old plaintiff had been replaced by two individuals, one who was 53 and one who was 32.[256] In determining whether the 53-year-old replacement created an inference of discrimination, the Fifth Circuit noted that the six-year age difference, without more, was again a "close question."[257] The Fifth Circuit noted that there is no bright-line rule of what age differential is sufficient proof,[258] and the court determined that the age differential regarding the 53-year-old replacement was better utilized as evidence when determining the ultimate issue of intentional discrimination.[259]Additionally, the Fifth Circuit noted that the plaintiff's other replacement, who was 32, was "substantially younger" and was sufficient to raise an inference of

---

[251] *Id.*

[252] 376 F.3d 305 (5th Cir. 2004).

[253] *Id.*

[254] *Id.* at 313. The Fifth Circuit found the plaintiff's other evidence compelling where the plaintiff presented multiple ageist comments by his supervisor. *Id.*

[255] 600 F. App'x 914, 919 (5th Cir. 2015).

[256] *Id.* at 916.

[257] *Id.*

[258] *See Bienkowski,* 851 F.2d at 1506 (citing *McCorstin v. United States Steel Corp.,* 621 F.2d 749, 754 (5th Cir. 1980)).

[259] *Flanner,* 600 F. App'x at 919.

discrimination.[260] Thus, the Fifth Circuit found that the Plaintiff had established a *prima facie* case of discrimination.[261]

Here, Dufrene, who was the interim replacement for Plaintiff, was six years younger than Plaintiff at the time Dufrene assumed the position.[262] Under Fifth Circuit precedent, this is a "close question" that may or may not raise an inference of discrimination. Therefore, this Court follows the lead of the Fifth Circuit and declines to find that Dufrene's age difference is insufficient to create a *prima facie* case. Rather, the Court will consider Dufrene's age as part of its analysis on whether Plaintiff has shown that Defendant was ultimately motivated by intentional discrimination. Further, as the Fifth Circuit noted in *Flanner*, Plaintiff's permanent replacement, Reisinger, was substantially younger than Plaintiff and easily raises an inference of discrimination. The Fifth Circuit has stated that in ADEA cases, the burden on a plaintiff to present a *prima facie* case is not an onerous one,[263] and a plaintiff need only make a "minimal showing."[264] Taking the evidence of Plaintiff's two replacements as a whole, the Court finds that Plaintiff presents a *prima facie* case of age discrimination.[265]

---

[260] *Id.*

[261] *Id.*

[262] Rec. Doc. 36-6 at 50–51.

[263] *Sanders v. Anadarko Petroleum Corp.*, 108 F. App'x 139, 142 (5th Cir. 2004).

[264] *Young v. Harris Health Care, Inc.*, 226 F.3d 643 (5th Cir. 2000); *Sanders*, 108 F. App'x at 142 (quoting *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996)); *McCreless v. Moore Bus. Forms Inc.*, 111 F.3d 893 (5th Cir. 1997).

[265] Because the Court finds that Plaintiff presents a prima facie case based on evidence of a younger replacement, it need not address Plaintiff's evidence that other individuals in her protected were similarly terminated or demoted. *See* Rec. Doc. 36 at 17.

*ii.*     *Legitimate, Non-Discriminatory Reason*

Once the Court finds that Plaintiff has made a *prima facie* showing, a presumption of discrimination is created, and the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its employment action.[266] Defendant only bears the burden of production, not persuasion, and this "involve[s] no credibility assessment."[267]

Here, Defendant asserts that Plaintiff was terminated from her position because she had exhibited poor performance in her role, and despite two PIPs that were implemented to help Plaintiff meet Defendant's standards, Plaintiff failed to adequately perform.[268] In support of this assertion, Defendant presents text from evaluations completed by three of Plaintiff's supervisors and findings by the Studer Group, an independent consultant, wherein various individuals detail Plaintiff's failure to comply with hospital directives, lack of willingness to change, and inability to adequately supervise employees.[269]

In the Studer Group's January 20, 2016 site visit summary, the consultant states the following regarding Plaintiff:

> Does not access and use data…Could not explain or even postulate a cause for the downturn in patient experience data in Q4. When questioned she admits she is unsure about the competency and consistency of staff in execution of non-negotiable behaviors. Also reports that accountability conversations with staff members have not produced change in behavior. Recommend objective evaluation of this leaders [sic] skills and mitigation to ensure success.[270]

In Plaintiff's second PIP, issued on February 11, 2016, Semere informs Plaintiff that:

---

[266] *Squyres*, 782 F.3d at 231 (quoting *Reeves*, 530 U.S. at 143).

[267] *Id.*

[268] Rec. Doc. 29-2 at 21.

[269] *Id.*

[270] Rec. Doc. 29-7 at 5.

[T]here is no accountability or apparent tracking of tardiness and or attendance [among your staff]…Additionally, you have had recent difficulties with narcotic discrepancy resolution and 63 unaccounted for Benadryl vials in your department. It was not communicate to me that you had taken any actions regarding these issues and there seemed to be no sense of urgency in resolving these issues…These behaviors are a clear indication of a lack of professionalism among the staff."[271]

The Fifth Circuit has recognized inadequate performance as a legitimate, nondiscriminatory reason for an employment decision,[272] and the Court finds that Defendant has presented sufficient evidence that Plaintiff's performance drove its employment decision. Further, Plaintiff does not contest that Defendant has met its burden of production. Thus, the Court finds that Defendant has satisfied its burden of producing evidence of a legitimate, nondiscriminatory reason for its decision to terminate Plaintiff.

### iii. Pretext

Once a court finds that a defendant has met its burden of producing a legitimate, non-discriminatory reason for its employment decision, "the presumption of discrimination created by the plaintiff's *prima facie* case disappears and the plaintiff must meet its ultimate burden of persuasion on the issue of intentional discrimination."[273] Plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."[274] A plaintiff can show pretext "'either through evidence of

---

[271] Rec. Doc. 29-3 at 179.

[272] *See Machinchick v. PB Power, Inc.*, 398 F.3d 345, 354 (5th Cir. 2005); *Kelly v. Costco Wholesale Corp.*, 632 F. App'x 779, 782 (5th Cir. 2015); *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 476 (5th Cir. 2015).

[273] *Machinchick*, 398 F.3d at 350.

[274] *Squyres*, 782 F.3d at 231 (quoting *Reeves*, 530 U.S. at 143).

disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'"[275]

Here, Defendant asserts that there is uncontested evidence that Plaintiff's performance was unsatisfactory.[276] Defendant avers that there is long-standing evidence of this history of poor performance.[277] In a 2011 Mid-Year Assessment, Arabie found that Plaintiff needed help with increasing employee engagement and patient satisfaction and Plaintiff needed to become less defensive.[278] In the June 11, 2015 PIP, Vedros stated that Plaintiff was not creating staff schedules in a manner that met staffing requirements, was not complying with a directive to reduce her staff's overtime hours, was not holding her staff accountable on hospital procedures, and was uncooperative and unwilling to receive feedback from her superiors on certain issues.[279]

During its January 20, 2016 visit, the Studer Group observed that Plaintiff did not conduct Nurse Leader Rounding effectively, did not respond appropriately to patient feedback and environmental cues, and could not account for downturns in patient ratings.[280] In the February 11, 2016 PIP, Semere stated that Plaintiff had a lack of accountability among her staff, failure to address missing narcotics, and failure to utilize required forms.[281] The Court finds that this evidence presents a history of performance issues by Plaintiff, but the Court also finds that Plaintiff offers evidence to contest whether, despite these performance issues, Defendant's reason for termination was still false.

---

[275] *Jackson*, 602 F.3d at 378–79 (quoting *Laxton v. Gap Inc.,* 333 F.3d 572, 578 (5th Cir. 2003)).

[276] Rec. Doc. 29-2 at 22–23.

[277] *Id.*

[278] Rec. Doc. 29-3 at 124.

[279] *Id.* at 146–48.

[280] Rec. Doc. 29-7 at 5.

[281] Rec. Doc. 29-3 at 179–80.

Plaintiff offers a revised declaration of Vedros, wherein Vedros states the following: "Tim Allen strongly encouraged me to place [Plaintiff] on a performance improvement plan in June, 2015."[282] "During the PIP period, [Plaintiff] maintained her standard of excellence as a nurse while improving in all areas of concern."[283] "[Plaintiff] satisfied all the terms of the performance improvement plan."[284] "Notwithstanding [Plaintiff]'s performance, Tim Allen wanted me to terminate [Plaintiff's] employment along with several other employees over the age of forty, without any consideration for their actual job performance."[285] "When pressed to terminate these older employees, I expressed to Mr. Allen that I thought what he was attempting to force me to do was wrong."[286]

At the summary judgment stage, "[t]he question is whether [the plaintiff] has shown that there is a genuine issue of material fact as to whether [the employer's] reason was pretextual."[287] Here, Plaintiff has shown that there are genuine issues of material fact in dispute. Defendant avers that Plaintiff's poor performance was the reason for terminating Plaintiff, but Vedros' testimony reveals that even when Plaintiff showed improvement in her performance and had satisfied the PIP, Allen still wanted to terminate Plaintiff. As Plaintiff's supervisor, Vedros believed that Plaintiff had improved enough that termination was not warranted, but, according to Vedros, Allen insisted that Plaintiff and other older employees be terminated despite their performance. This is

---

[282] Rec. Doc. 46-1 at 3.

[283] *Id.*

[284] *Id.*

[285] *Id.* at 3–4.

[286] *Id.* at 4.

[287] *Moss*, 610 F.3d at 922 (quoting *Jackson*, 602 F.3d at 378–79).

an issue of fact on whether Allen targeted employees based on their age and disregarded performance.

Issues of material fact also exist on whether Allen was part of the decision to terminate Plaintiff. During Semere's deposition, she was asked whether she talked with Allen about the decision to terminate Plaintiff.[288] In response, Semere stated: "Yes, I'm sure I had conversations. I don't recall exactly, but I don't ever terminate somebody without letting him [Allen] know that that's going to happen."[289] When next asked what Allen said in response and whether he showed any concern, Semere responded, "No. He usually follows the lead of the HR business partner, let them kind of direct what we do in our decisions."[290] In Allen's deposition, when asked what role he played in Plaintiff's termination, he stated that "[he] was involved from the perspective of hearing what was going on, because my people routinely report out to me what they're doing."[291]

Defendant asserts that this testimony by Semere proves that Semere was the "undisputed decisionmaker" who decided to terminate Plaintiff based solely on performance and without any influence from Allen.[292] Plaintiff, however, argues that as Semere's supervisor who approved all of Semere's decisions, Allen was the final authority on termination decisions.[293] Plaintiff insists that when Semere decided to terminate Plaintiff, Allen may have influenced this decision.[294] The Court finds some support for Plaintiff's argument in the record.

---

[288] Rec. Doc. 36-6 at 50.

[289] *Id.*

[290] *Id.*

[291] Rec. Doc. 36-5 at 40.

[292] Rec. Doc. 40 at 10.

[293] Rec. Doc. 46 at 4.

[294] *Id.*

Semere acknowledges that before she terminated a staff member, she would discuss it with Allen, and both Semere and Allen admit that Semere spoke with Allen about Plaintiff's termination. Though Semere testifies that Allen "usually follows the lead of the HR business partner," Semere does not clarify whether Allen simply followed HR regarding Plaintiff's termination. Neither does Semere clearly detail whether Allen was more involved in the decision. In fact, Semere's recollections of Allen's involvement is equivocal in and of itself. Semere states that Allen did not have concerns about the termination decision and usually followed the lead of the HR partner, but immediately before this, Semere had stated that she did not recall the conversations that she had with Allen regarding Plaintiff's termination. It is unclear how Semere recalled that Allen had no concerns about Plaintiff's termination if Semere did not remember her conversations with Allen. Further, Semere's amorphous testimony of her discussions with Allen does not clarify whether and to what extent Allen was involved in the decision to terminate Plaintiff. Allen also does not make this fact clear in his deposition.

Ultimately, Plaintiff alleges that Allen gave Vedros the directive to terminate older employees. There is an issue of fact on whether this occurred and its significance. Plaintiff also alleges that Allen participated in the decision to terminate Plaintiff. There are issues of fact surrounding Allen and Semere's discussion and the process the parties engaged in to arrive at the decision to terminate Plaintiff.[295] Drawing all reasonable inferences in favor of Plaintiff,[296] these issues are material disputes because they are probative of Defendant's true motivation for terminating Plaintiff. If Allen did in fact direct Vedros to terminate Plaintiff and other older employees without regard to their performance, and Allen was part of the decision to terminate

---

[295] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[296] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

Plaintiff, then Defendant's proffered reason for termination may have been pretextual. Such genuine disputes are issues that must be resolved by a trier of fact. Thus, judgment as a matter of law is inappropriate, and the Court will deny summary judgment on the age discrimination claim.

### 2. Retaliation Claim

Defendant asserts that Plaintiff fails to present a *prima facie* case of retaliation because Plaintiff cannot prove a causal link between her report of age discrimination and her termination.[297] Defendant also contends that Plaintiff cannot prove that terminating her for alleged poor performance was a pretext for retaliation.[298] In opposition, Plaintiff directly asserts that she establishes a *prima facie* case of retaliation based on her placement on the second PIP.[299] It is unclear whether Plaintiff also bases her retaliation claim on her actual termination, but in reviewing the briefing, it appears that Plaintiff's arguments in support of her retaliation claim focus on both the second PIP and the termination as retaliatory actions.[300] Therefore, the Court will analysis whether Plaintiff presents a retaliation claim based on both the second PIP and her termination.

"The ADEA's antiretaliation provision prohibits an employer from discriminating against an employee for opposing an unlawful practice or asserting a charge, testifying, assisting, or participating in an ADEA proceeding or investigation."[301] The burden-shifting analysis presented in *McDonnell Douglas* applies to ADEA retaliation claims that are based on circumstantial evidence.[302] If an employee makes a *prima facie* showing that the employer engaged in retaliation,

---

[297] Rec. Doc. 29-2 at 23–24.

[298] *Id.*

[299] Rec. Doc. 36.

[300] *See, e.g.,* Rec. Doc. 26 at 21–22; Rec. Doc. 46 at 4.

[301] *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 478 (5th Cir. 2015) (citing 29 U.S.C. § 623(d)).

[302] *Fanning v. Metro. Transit Auth. of Harris Cty., Tex.*, 141 F. App'x 311, 313 (5th Cir. 2005) (citing *Patrick v. Ridge,* 394 F.3d 311, 315 (5th Cir. 2004)).

the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employee's termination.[303] If the employer meets this burden, the employee must then prove that the employer intentionally discriminated; this can be proven by showing that the employer's proffered reason was pretext.[304]

To establish a *prima facie* retaliation case, a plaintiff must show that "1) [s]he engaged in protected activity; (2) [s]he suffered an adverse employment decision; and (3) a causal link exists between the protected activity and the adverse employment decision."[305] Here, Plaintiff asserts that she presents a *prima facie* case because (1) she engaged in protected activity by stating in her rebuttal that the first PIP was issued based on age discrimination, (2) Defendant's "nit-picking criticism of her work and issuance of a second PIP just a few months later" constitute adverse employment actions, and (3) causation is established by proximity in time and Semere's disinterest in helping Plaintiff improve.[306] Defendant concedes, for the purposes of summary judgment, that Plaintiff has established the first two elements of her *prima facie* case, but Defendant argues that Plaintiff cannot establish a causal link between her activity and the adverse employment action.[307]

Considering the first element of Plaintiff's *prima facie* retaliation case, "[a] plaintiff engages in 'protected activity' by 'oppos[ing] any practice forbidden by the ADEA.'"[308] Filing an internal complaint of discrimination qualifies as protected activity.[309] Here, Plaintiff stated in her

---

[303] *Id.*

[304] *Id.*

[305] *Goudeau*, 793 F.3d at 478 (5th Cir. 2015) (quoting *Medina v. Ramsey Steel Co.,* 238 F.3d 674, 684 (5th Cir. 2001)).

[306] Rec. Doc. 36 at 21.

[307] Rec. Doc. 29-2 at 24.

[308] *Gonzales v. Wells Fargo Bank, Nat'l Ass'n*, 733 F. App'x 795, 798 (5th Cir. 2018) (quoting *Heggemeier v. Caldwell Cty.*, 826 F.3d 861, 869 (5th Cir. 2016) (per curiam)).

[309] *Fierros v. Tex. Dep't of Health,* 274 F.3d 187, 194 (5th Cir. 2001).

rebuttal that being placed on the PIP "seems like a type of age discrimination against me."[310] Further, Plaintiff met with Allen and McKenna regarding her rebuttal and stated during the meeting that she believed the PIP was issued based on age discrimination.[311] Because Plaintiff directly told her supervisors that she suspects age discrimination, the Court finds that this qualifies as protected activity.

Regarding the second element of Plaintiff's *prima facie* case, an adverse employment action is any action that "'might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"[312] Plaintiff asserts that "the issuance of the second PIP by Ms. Semere is the basis for Plaintiff's retaliation claim."[313]According to Semere, a PIP is a disciplinary action that is one step away from termination,[314] and the PIP itself states that failure to meet its terms can result in "disciplinary action up to an including termination."[315] It is likely that threat of being issued an PIP would dissuade a worker from reporting discrimination. Further, Plaintiff's actual termination is a clear adverse employment action. Therefore, the Court finds that Plaintiff suffered an adverse employment action when Semere placed Plaintiff on the second PIP and subsequently terminated her employment.

Next, Plaintiff contends that causation is established by the proximity in time between her discrimination allegations and the implementation of the second PIP.[316] The Fifth Circuit has

---

[310] Rec. Doc. 36-3 at 12.

[311] Rec. Doc. 36-2 at 30.

[312] *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (quoting *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006)).

[313] Rec. Doc. 36 at 9.

[314] Rec. Doc. 36-6 at 48.

[315] Rec. Doc. 29-3 at 180.

[316] Rec. Doc. 36 at 21.

declared that "[t]emporal proximity between protected activity and an adverse employment action, by itself, does not constitute sufficient evidence to satisfy the prima facie burden unless that proximity is 'very close.'"[317] Here, Plaintiff submitted her discrimination allegations on June 18, 2015.[318] Semere placed Plaintiff on the second PIP on February 11, 2016.[319] An eight month lapse is not a "very close" proximity that creates a causal link for Plaintiff's *prima facie* case.

In most retaliation cases, "[the] 'causal link' is established when the evidence demonstrates that 'the employer's decision to terminate was based in part on knowledge of the employee's protected activity.'"[320] The Fifth Circuit has emphasized that "the focus must be on the final decisionmaker; that is, the plaintiff must present evidence that the final decisionmaker with respect to the adverse employment action was aware of the plaintiff's protected conduct."[321] Here, Plaintiff asserts that Allen, not Semere, is the person who directed that Plaintiff be placed on the second PIP and ultimately terminated.[322] In contrast, Defendant alleges that Semere, and not Allen, was the decisionmaker.[323] Before the Court can analyze what the ultimate decisionmaker had knowledge of, it must first determine who was the decisionmaker.

Defendant asserts that Semere was the decisionmaker who placed Plaintiff on the second PIP and terminated Plaintiff.[324] Defendant insists that Allen was not a key player in these

---

[317] *Everett v. Cent. Mississippi, Inc. Head Start Program*, 444 F. App'x 38, 46 (5th Cir. 2011) (citing *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268 (2001) (noting 3 and 4 year period insufficient).

[318] Rec. Doc. 36-3 at 12.

[319] Rec. Doc. 36 at 7.

[320] *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (quoting *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1122 (5th Cir. 1998)).

[321] *Everett v. Cent. Mississippi, Inc. Head Start Program*, 444 F. App'x 38, 46 (5th Cir. 2011) (citing *Ackel v. Nat'l Commc'ns, Inc.,* 339 F.3d 376, 385 (5th Cir. 2003)).

[322] Rec. Doc. 36 at 22.

[323] Rec. Doc. 40 at 10.

[324] Rec. Doc. 29-2 at 24.

decisions.[325] As discussed above, the evidence on this is unclear. Semere and Allen both admit that Semere spoke with Allen regarding the termination. There are few details on the extent of the parties' exchange or Allen's participation in the decision to terminate Semere, but drawing all reasonable inferences in favor of Plaintiff,[326] it is likely that as Semere's boss, Allen had the final authority over whether Semere terminated Plaintiff or chose to keep Plaintiff on staff. In presenting a *prima facie* case, a Plaintiff need only make a "minimal showing."[327] It is not an onerous burden.[328] Accordingly, the evidence of Allen's involvement in the termination decision is sufficient to establish, for the *prima facie* case, that Allen was a "final decisionmaker" on Plaintiff's termination. The record does not, however, reveal that Allen spoke with Semere about placing on the second PIP. Thus, the Court can only consider Allen as a decisionmaker on the termination claim. Semere remains the sole decisionmaker regarding the implementation of the second PIP.

Considering first whether Semere retaliated against Plaintiff by placing her on the second PIP, the Court looks to whether Semere had knowledge of Plaintiff's protected activity.[329] According to Defendant, Semere did not work at St. Anne's at the time Plaintiff made her discrimination allegations and Semere was never informed of these allegations.[330] In Semere's declaration, Semere states that she "was not aware that [Plaintiff] had complained of age

---

[325] *Id.*

[326] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[327] *Young v. Harris Health Care, Inc.*, 226 F.3d 643 (5th Cir. 2000); *Sanders*, 108 F. App'x at 142 (quoting *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996)); *McCreless v. Moore Bus. Forms Inc.*, 111 F.3d 893 (5th Cir. 1997).

[328] *Id.*

[329] *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (quoting *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998)).

[330] Rec. Doc. 29-2 at 24.

discrimination against [] Vedros at the time [Semere] issued a Performance Improvement Plan to [Plaintiff] and at the time I decided to terminate [Plaintiff's] employment."[331] Plaintiff does not provide any evidence to refute this assertion. Neither does Plaintiff allege that Semere learned about Plaintiff's discrimination allegations through another channel. Additionally, the Court does not find any evidence in the record that proves otherwise. "If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct."[332] Thus, Plaintiff cannot establish a causal link between her discrimination complaint and Semere placing her on the second Plan. Accordingly, Plaintiff cannot support a *prima face* case for retaliation based on the second PIP.

Turning to Allen as a decisionmaker on Plaintiff's termination, the Court examines whether Allen had knowledge of Plaintiff's protected activity. Plaintiff asserts that after she was placed on the first PIP, she wrote a rebuttal to management, including in the document an accusation that the first PIP was issued because of age discrimination.[333] Plaintiff also provides evidence from her meeting with Allen and McKenna regarding her rebuttal.[334] In her deposition, Plaintiff states that when she met with Allen and McKenna to discuss the first PIP, Allen had a "very discouraging look on his face."[335] Plaintiff testified that Allen kept asking, "What do you want?" and Plaintiff responded, "I want my job."[336] Plaintiff contends that during this meeting, she told Allen and

---

[331] Rec. Doc. 29-7 at 1.

[332] *Gollas v. Univ. Of Texas Health Sci. Ctr. At Houston*, 425 F. App'x 318, 325 (5th Cir. 2011).

[333] Rec. Doc. 36 at 5; Rec. Doc. 36-2 at 30.

[334] Rec. Doc. 36 at 6.

[335] Rec. Doc. 36-2 at 30.

[336] *Id.*

McKenna that she believed the PIP was age discrimination.[337] This testimony proves that Allen, who had the authority over Plaintiff's termination, knew of Plaintiff's age discrimination allegations. Because a decisionmaker involved in the termination process was aware of Plaintiff's protected activity, this establishes the causal link for Plaintiff's *prima facie* retaliation case based on the termination.

After Plaintiff establishes her *prima facie* case of retaliation, Defendant must articulate a legitimate, non-discriminatory reason for terminating Plaintiff.[338] As discussed above, Defendant insists that Plaintiff was terminated solely based on her poor work performance.[339] Plaintiff asserts that this reason is pretextual because Allen, who was a decisionmaker, sought to terminate older employees without regard to their performance.[340] The Court has already found a genuine dispute of material fact on the issue of whether Defendant's proffered reason was pretext. Because this same issue of fact exists for Plaintiff's retaliation claim, summary judgment is also inappropriate on this claim.

## V. Conclusion

There remains a genuine issue of material fact on whether Plaintiff's work performance was a pretextual reason for Defendant to terminate Plaintiff's employment. Because a genuine issue of fact remains on this issue, Defendant is not entitled to judgment as a matter of law on either the age discrimination or the retaliation claim.

Accordingly,

---

[337] *Id.*

[338] *See Fanning v. Metro. Transit Auth. of Harris Cty., Tex.*, 141 F. App'x 311, 313 (5th Cir. 2005) (citing *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)).

[339] Rec. Doc. 29-2 at 21–22.

[340] Rec. Doc. 36 at 18–20.

**IT IS HEREBY ORDERED** that Defendant Ochsner Clinic Foundation's "Motion for Summary Judgment"[341] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 13th day of May, 2019.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[341] Rec. Doc. 29.